Walter Chester **FERGUSON, Jr.,**
Appellant (Defendant),

v.

Martin Wesley **FERGUSON,**
Appellee (Plaintiff).

No. 86–160.

Supreme Court of Wyoming.

July 9, 1987.

Frederic C. Reed, Cheyenne, for appellant.

John W. Pattno, Cheyenne, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Justice.

The primary legal problem in this case is whether the district court was justified in entering a partial summary judgment against a cotenant on the ground that as a matter of law the record foreclosed his claim of adverse possession against the other cotenants, a brother and a sister. The other issues in the case then were tried to the court, and claims of error are asserted charging that the trial court should not have granted a motion to strike the appellant's jury demand and that the judgment of the trial court was opposite from what it should have been according to the weight of the evidence. The trial court correctly applied the law in granting the partial summary judgment; the jury demand properly was stricken in this instance; and the

755

weight of the evidence does not require a different conclusion than the one reached by the trial court. The judgment of the trial court is affirmed in all respects.

In the appellant's brief, the issues in this case are stated to be:

"1. Whether the trial court erred in granting partial summary judgment as to appellant's third cause of action upon his counterclaim for quiet title by adverse possession.

"2. Whether the trial court erred in granting appellee's motion to strike appellant's jury demand.

"3. Whether the judgment of the trial court was contrary to the weight of the evidence requiring reversal and retrial."

The appellee agrees that the issues are those set forth in the appellant's brief.

The setting for this case is Laramie County, and the scenario involves a family ranching enterprise. The subject matter of the case is 1,300 acres of land deeded by the paternal grandmother of the parties to her grandchildren, Martin, Walter, Jr., Bergetta and another sister who sold her interest in the property to the parties' father, Walter, Sr., in 1944. The land was transferred to the grandchildren instead of their father, Walter, Sr., because of financial difficulties that the father had at the time. The hope was to protect this property from the father's creditors.

Even though the record title was in the name of the grandchildren, Walter, Sr., exercised control over the land, using it as a part of his ranch from 1934 to 1954. In 1954, a corporation, known as Walter Ferguson & Sons, Inc., was formed by Walter, Sr., with his children, Martin, Walter, Jr., and Bergetta. The assets of the corporation consisted of two ranches, one comprising 8,885 acres and the other 4,435 acres. In 1956, a third ranch was purchased which encompassed 9,289 acres. Walter, Sr., owned 48% of the stock in this corporation; Martin and Walter, Jr., each had 25% of the stock; and Bergetta had 2%. The land in dispute never was transferred to the corporation. Although it was operated as part

of the corporation's land, it remained in the names of Martin, Walter, Jr., and Bergetta.

In 1963, Martin needed money to finance a divorce action which then was pending. Walter, Sr., Walter, Jr., and Bergetta agreed to allow Martin to mortgage the disputed land provided that he would pay the taxes on it and would pay the debt which the mortgage secured. Later in the year, Walter, Sr., died, and he left his interest in the land and his stock in the corporation to Martin, Walter, Jr., and Bergetta. Martin and Walter, Jr., then owned 41.5% of the stock in the corporation each, while Bergetta's interest was 17%.

The two brothers and the sister continued to operate the ranch as a unit until 1966 when they disagreed with respect to the management of this enterprise. They concluded to resolve their differences by splitting up the corporation. Consultation with an attorney and an accountant led the three to decide to operate the enterprise as three separate ranches under one corporate name for five years in order to effect a "spin off" for federal income tax purposes. In December of 1971, when the five-year period had elapsed, Martin, Walter, Jr., and Bergetta executed an agreement pursuant to which the ranching enterprise, except for the 1,300 acres in dispute, was divided into three separate ranches, one for each of the parties. The divided ranch lands then were held by the respective parties in their individual names, unlike the 1,300 acres in dispute. The agreement did not treat with the 1,300 acres of land.

Walter, Jr., in the litigation, asserted that the three made an oral agreement that he would obtain sole title to the 1,300 acres at some future time when Martin had paid off the mortgage. Martin and Bergetta denied any such oral agreement. During the period from the corporate dissolution until the partition action was commenced, Walter, Jr., used the 1,300 acres for grazing his cattle, fenced the land, paid expenses attributable to it, and conducted some farming operations on it all as a part of the operation of his ranch unit. As he had agreed to do, Martin continued to pay the taxes until 1985 when the mortgage was satisfied.

In March of 1985, Martin and Bergetta then brought this action to partition the 1,300 acres. Walter, Jr., answered the partition action alleging affirmative defenses of estoppel, unjust enrichment and breach of the oral contract. In his answer, he filed a counterclaim for specific performance of the oral contract and demanded a jury trial on the issues raised in his counterclaim. During the pendency of the action, Bergetta transferred her interest in this land to Walter, Jr., and she no longer was a party to the proceedings. Martin filed a motion for summary judgment which the trial court granted in part, concluding that the record could not justify a claim of adverse possession by Walter, Jr., as a matter of law. With respect to the balance of the issues, the trial court found them primarily equitable in nature and therefore granted Martin's motion to strike Walter, Jr.,'s demand for a jury trial. The case then was assigned to another judge for trial on the remaining issues. After trial, the judge found that there was no oral contract to assign the land to Walter, Jr., and he partitioned the disputed property, granting Walter, Jr., the appellant, two-thirds of the property, and Martin, the appellee, one-third of the property. This appeal then is taken from the summary judgment and the ultimate judgment entered by the trial court.

The trial court properly granted the partial summary judgment on the issue of adverse possession by Walter, Jr. There was no genuine issue of any material fact, and Martin was entitled to judgment as a matter of law. The record discloses that Walter, Jr., used the land for the purpose of grazing his cattle, put up fences for that purpose, conducted some farming operations on the land from which he received the profits and treated the land as a part of his ranch. The record also discloses an agreement by the parties pursuant to which Martin used land that Walter, Jr., received as a product of the corporate dissolution for grazing cattle, and the quid pro quo was the use of the 1,300 acres by

Walter, Jr. Martin paid the taxes on the 1,300 acres until 1985, and he maintained it as security for a mortgage with the permission of Walter, Jr., and Bergetta. The record is silent with respect to any manifestation on the part of Walter, Jr., that he intended to possess the disputed land adversely to the interests of his brother and sister.

In order to establish a claim of adverse possession, the claimant must demonstrate "actual, open, notorious, exclusive, and continuous possession of another's real property for the statutory period, which possession is hostile and under a claim of right or color of title." *Farella v. Rumney*, Wyo., 649 P.2d 185, 186 (1982); *Shores v. Lindsey*, Wyo., 591 P.2d 895 (1979); *City of Rock Springs v. Sturm*, 39 Wyo. 494, 273 P. 908, 97 A.L.R. 1 (1929). In addition, we have said that an intent to assert an adverse claim is necessary to establish title by adverse possession. *Gray v. Fitzhugh*, Wyo., 576 P.2d 88 (1978); *Bryant v. Cadle*, 18 Wyo. 64, 104 P. 23 (1909), reh. denied 18 Wyo. 95, 106 P. 687 (1910). The intent to assert an adverse claim must be established by objective evidence, that is there must be objective indications of an intent to adversely possess the land of another. Testimony as to the claimant's subjective intent does not suffice. *City of Rock Springs v. Sturm*, supra.

The requirement of objective evidence to assert an adverse claim makes it very difficult for a cotenant to establish adverse possession against another cotenant. In *Osborn v. Warner*, Wyo., 694 P.2d 730, 733 (1985), we said:

" '[M]ere possession and use of the entire property by one cotenant is not an ouster, nor is his possession adverse, so long as the other cotenants remain voluntarily out of possession, and are not kept out of possession by the acts of the possessor-tenant.' (Footnotes omitted.) II American Law of Property § 6.13 (1952), pp. 52–54. See *Hackett v. Linch*, 57 Wyo. 289, 116 P.2d 868 (1941)."

Walter, Jr., relies on *Petrusic v. Carson*, Wyo., 496 P.2d 70, 71–72 (1972), in which this court recited the facts as follows:

" * * * Plaintiff Carson has had possession of the land known as the Buck place since 1930, paying all taxes, maintaining all fences around it and subsequently enclosing it within his pastures and fields, cultivating various acreages of it and raising livestock thereon; in 1944 he quieted title to the 'sheriff's mortgage' in an action against Barnes Brothers of Minnesota, et al.; executed various oil and gas leases involving the property since 1945; received all rents and profits from the land since 1930, leasing portions of it—beginning probably in 1930; and in 1938 when a highway cut off segments of his property and a neighbor's land, traded portions of the Buck place for Rule land."

The court held that those facts sufficiently demonstrated an intent by one cotenant to possess adversely against other cotenants.

*Petrusic v. Carson*, supra, readily is distinguishable from this case. The facts involving the Ferguson lands contain no objective indications of an intent by Walter, Jr., to possess the land adversely to his brother and sister.

Walter, Jr., also urges that the trial judge who in part disposed of the motion for summary judgment obviously misunderstood the facts concerning a dispute as to entitlement to damages paid by the City of Cheyenne in a separate action. The judge who later was assigned the case for trial affirmed the partial summary judgment because he concluded it was properly granted on grounds other than those relied upon by the initial judge. Our rule is clear that, if a judgment is sustainable on any legal ground appearing in the record, it should be sustained. *Walker v. Karpan*, Wyo., 726 P.2d 82 (1986); *Ely v. Kirk*, Wyo., 707 P.2d 706 (1985); *Walter v. Moore*, Wyo., 700 P.2d 1219 (1985); *Hurst v. State*, Wyo., 698 P.2d 1130 (1985); *Anderson v. Bauer*, Wyo., 681 P.2d 1316 (1984); *Agar v. Kysar*, Wyo., 628 P.2d 1350 (1981); *Budd v. Bishop*, Wyo., 543 P.2d 368 (1975). The partial summary judgment was sustainable because of the failure of the record to disclose objective evidence of an intent by Walter, Jr., to adversely pos-

.sess the land. Any misunderstanding of the collateral facts relied upon does not affect the validity of the partial summary judgment.

■ With respect to trial issues, Walter Jr., contends that the trial court should not have stricken his demand for a jury. The right to a jury is controlled by Rule 38, W.R.C.P., which provides in pertinent part:

"(a) *Right preserved.*—Issues of law must be tried by the court, unless referred as hereinafter provided; and issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury unless a jury trial be waived, or a reference be ordered. All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred.

"(b) *Demand.*

"(1) By Whom.—Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after service of the last pleading directed to such issue. Such demand may be endorsed upon a pleading of the party."

\*     \*     \*     \*     \*     \*

We construed this rule in *True v. Hi-Plains Elevator Machinery, Inc.,* Wyo., 577 P.2d 991, 1003 (1978), in which we said:

" \* \* \* The adoption of this rule, however, does not alter the long-established precept that cases purely equitable in character are triable by the court, subject to its power to order any issues to be tried by the jury. *Hein v. Lee,* Wyo., 549 P.2d 286, 290 (1976)."

In *Davidek v. Wyoming Investment Company,* 77 Wyo. 141, 308 P.2d 941 (1957), we relied upon the authorities supporting the text in 31 Am.Jur. § 21 at 570–571 to explain the proposition that determination as to whether an action is primarily legal in nature, and one in which a jury trial should be granted, if requested, or equitable in nature, and one in which the right to a jury trial does not exist, must be made upon an examination of the entire pleadings and all the issues raised not merely by "the plaintiff's declaration, complaint, or petition, or his evidence." *Davidek v. Wyoming Investment Company,* supra, 308 P.2d at 946. Walter, Jr.,'s effort in the course of the trial was an attempt to demonstrate the existence of an oral contract with respect to which he sought specific performance. The goal was to induce the court to declare that Walter, Jr., owned the disputed property because of the oral contract. He also sought damages for an alleged breach of the oral contract. Martin, as the plaintiff, adhered to his attempt to obtain a partition of the land among the cotenants.

Partitioning of land in a legal proceeding is an equitable remedy, and there is no right to a trial by jury of questions of fact arising in such a proceeding. Cases cited in 50 C.J.S. *Juries* § 34 at 749 (1947). Specific performance of a contract is also an equitable remedy as to which there is no right to a jury trial. Cases cited in 50 C.J.S. *Juries* § 36 at 753 (1947). An action to quiet title to land also is an equitable remedy and historically came within the jurisdiction of the court of equity in which there was no right to a jury trial. Cases cited in 50 C.J.S. *Juries* § 33 at 748 (1947). The only legal remedy which either of the parties sought was money damages requested as alternative relief by Walter, Jr., for breach of the oral contract. The underlying claim in this case on behalf of each party was one for equitable relief, and the mere assertion of money damages is not sufficient to require the granting of a demand for a jury trial on that issue. *True v. Hi-Plains Elevator Machinery, Inc.,* supra; *Davidek v. Wyoming Investment Company,* supra; cases cited in 50 C.J.S. *Juries* § 38 at 753–754 (1947).

Walter, Jr., argues that our Uniform Declaratory Judgments Act, §§ 1–37–101 through 1–37–114, W.S.1977, does not exclude the right to a trial by jury in some instances. We agree that this view is correct. See *Holly Sugar Corporation v. Fritzler,* 42 Wyo. 446, 296 P. 206 (1931). We explained, however, in *Goodson v. Smith,* 69 Wyo. 439, 243 P.2d 163, reh.

denied 69 Wyo. 439, 244 P.2d 805 (1952), that the requirement for a jury trial in a declaratory judgment action depends on "the nature of the case." *Goodson v. Smith,* supra, at 470, 243 P.2d 163. In this case, the nature of the case primarily was equitable, and the district court was not required to grant a jury trial. *True v. Hi-Plains Elevator Machinery, Inc.,* supra. As we said in *Hein v. Lee,* Wyo., 549 P.2d 286, 290 (1976):

> " * * * As this case went to trial it was not one for the recovery of money only, or specific real or personal property, and consequently, under the rule [Rule 38(a), W.R.C.P.], there is no right to a jury trial. The adoption of this rule did not change the concept announced in the early case of *Lellman v. Mills,* 15 Wyo. 149, 87 P. 985 (1906), that cases which are purely equitable in character, as this one is, are triable by the court, subject to its power to order any issue to be tried by a jury. The district court here properly proceeded to try the case without impaneling a jury." (Citation omitted.)

■ The last issue presented by Walter, Jr., is that the finding of the trial court that the oral contract did not exist was contrary to the weight of the evidence and certainly was not supported by the evidence. We do not substitute our judgment on factual issues for that of the trial court if the record contains evidence to support that decision. *Myer v. Miller,* Wyo., 631 P.2d 441 (1981). The trial court in this instance heard the evidence and found that no oral contract existed between the parties. The testimony was conflicting. Martin and Bergetta Ferguson each testified that there was no agreement between the parties with respect to the property other than that it would be held as partnership property, which is consistent with the record title. Walter, Jr., on the other hand, testified that there was an agreement that he would receive the property at a future date as sole owner and that Martin and Bergetta would convey their respective interests in this disputed property to him.

During the trial, Walter, Jr., attempted to corroborate his claim of oral contract by the evidence that he exercised control over the land, grazing his cattle on it and fencing the property, among other acts of dominion. The same acts were not sufficient to raise a genuine issue of material fact as to adverse possession, and we agree with the trial judge that they were not sufficient to demonstrate an oral contract. In a further attempt to bolster his position, Walter, Jr., put in evidence that Bergetta eventually signed her interest in the disputed property over to him. Bergetta testified, however, that, after insistent importuning by Walter, Jr., she deeded her interest to him, "because I got tired of all night visits from him and telephone calls * * * because of pleurisy and my bad heart and high blood pressure, I decided to give it to him and get it over with."

In deciding a challenge to the sufficiency of evidence to support the findings of a trial court, our rule is that we accept the evidence of the prevailing party as true, leave out of consideration any conflicting evidence, and give every favorable inference to the evidence of the prevailing party. *Matter of Jones,* Wyo., 702 P.2d 1299 (1985); *Lynch v. Patterson,* Wyo., 701 P.2d 1126 (1985); *Walter v. Moore,* supra. We will reverse a finding of fact by the trial court only if our search of the record leads to a conclusion that there was not any substantial evidence to support the trial court's finding. *Matter of Jones,* supra; *Tremblay v. Reid,* Wyo., 700 P.2d 391 (1985). In this instance, there is no question that substantial evidence was present to support the finding of the trial court.

Walter Ferguson, Jr., has failed to sustain any of his claims of error in this appeal and the partial summary judgment and the ultimate judgment of the trial court are affirmed.